RICHARD C. WEST and WIFE *v.* PETER S. MOORE.

1. WILL: CONSTRUCTION OF: CONDITION PRECEDENT IN RELATION TO THE MORAL CONDUCT OF THE DEVISEE: CASE IN JUDGMENT.—The testatrix, by the second clause of her will, devised "the whole of her estate, both real and personal, to her executors, for the use and benefit of her two children, P. and F.," and subject "to such charges as she should make thereon," giving the executors the power to sell any of the property in their discretion ; and she directed that her estate should "be kept together until her debts were all paid." The fourth clause of the will was as follows: "And as my son P. seems to be of a dissipated, extravagant disposition, it is my will that my executors do not allow him to spend anything more than for necessary clothing and food, and doctor's bills, while under the age of twenty-one years ; and furthermore, if my son P. will go to some college, and by application acquire a good and practical education, and by good conduct and steady habits until the age of twenty-four, it is my will

that my estate be equally divided between my children; but if my son P. continue in his wild, extravagant, dissipated habits, my daughter F. is to inherit all my estate, allowing to my son three hundred dollars per annum." By the fifth clause she directed that, in the event of her daughter's marriage, her portion of the estate should be secured to her and her children, so that they might not come to want; and if she died without issue, that her brother P. should inherit her estate; and if P. should marry, and die without legal issue, that " such property as he may receive from my (her) estate, be equally divided between his widow and her daughter F.;" and finally, the testatrix declared as follows : " My last wish is that, though this, my last will and testament, be not written in strict legal phraseology, it may not be the cause of any litigation whatever, but be construed, as intended, to keep my children from want, by securing their property so that they cannot squander it." *Held,* 1st. That the provision in relation to P.'s acquiring an education and reforming his habits, was a condition precedent, to be performed within the time prescribed, before any interest in the property would vest in him.  2d. That the direction that P. should acquire a good practical education, and be of good conduct and steady habits, was not void for uncertainty, nor was it impracticable to ascertain and determine whether he had complied with the condition or not.  3d. That the period in which P. was to comply with the condition was his arrival at twenty-four years of age, and if he failed up to that time to perform it, the whole estate vested in his sister F., subject to the charge in P.'s favor of three hundred dollars per annum.

2. SAME : EFFECT OF INCOMPLETE SENTENCE IN : WHEN THE INTENTION IS PLAIN. —A condition annexed to a devise, will not be held void on account of the omission of a word or phrase, necessary to make the sentence complete and grammatically accurate, if the testator's intention can be clearly ascertained from the words used.

APPEAL from the Court of Probates of Wilkinson county.  Hon. Francis Gildart, judge.

In October, 1857, Peter S. Moore filed his original petition in the court below, seeking distribution of the estate of his mother, Ellen C. Moore.  To this petition West and wife demurred, and their demurrer was sustained, and leave given to petitioner to file an amendment.  Afterwards, Moore filed his amended petition, in which he alleged that, in 1850, his mother died, leaving a will, by which she bequeathed and devised her estate to her only children, the petitioner and Mrs. West; that by the said will she gave to petitioner one-half of her estate, which was to be delivered to him when he arrived at twenty-four years of age; that one of the executors had refused to act, and the other had died; and that

West, the husband of petitioner's sister, was now administrator, with the will annexed, and had the estate in possession. The petitioner alleges that he is now over twenty-four years of age, and has tendered a refunding bond to West, and asks for distribution of the estate.

To this petition West and wife demurred; and among other causes assigned, that the petition did not aver that the petitioner had performed or complied with the condition mentioned in the will, or what he was to take.

This demurrer was overruled, and West and wife answered, and made the will of Mrs. Moore an exhibit to the answer. They insisted that petitioner was only entitled to $300 per annum, under the will, and filed his receipts for that amount paid him annually. The will of Mrs. Moore was probated in December, 1850, and is in these words:

"I, Ellen C. Moore, of the County of Wilkinson and State of Mississippi, being of sound and disposing mind, but in feeble health, do make and ordain this my last will and testament, revoking all others.

"1st. I constitute and appoint James D. Stewart and C. C. Cage, of the same county, my sole executors of this my last will and testament.

"2d. I devise my whole estate, both real and personal, to my executors, for the use and benefit of my children, and such charges as I shall make thereon. Peter Smith Moore and Frances Matilda Moore, are their names.

"3d. I desire that they may sell such property as they may think it most advantageous to do, giving the legal notice for so doing.

"4th. It is my will and desire that my estate be kept together until all my just debts are paid, in the hands of my executors. And as my son, Peter Smith Moore, seems to be of a dissipated, extravagant disposition, it is my will that my executors do not allow him to spend anything more than for necessary clothing, and food, and doctor's bills, whilst under the age of twenty-one years of age: and furthermore, if my son, Peter S. Moore, will go to some college, and by application acquire a good, practicable education, and by good conduct and steady habits, until the age of

twenty-four: it is my will that my estate be equally divided between my children, both real and personal; but if my son Peter continue in his wild, extravagant, dissipated habits, my daughter Frances Matilda is to inherit all my estate, both real and personal; allowing to my son three hundred dollars per annum. And now to Him who alone can govern the unruly wills and affections of sinful men, I commit him, humbly praying that He will in due season turn him from the error of his ways.

"5th. In the event of my daughter's marriage, it is my will that her portion of my estate be secured to her and her children, so that they may not come to want; and in the event of her dying without issue, it is my will that her brother inherit her estate, making such bequests as she may like. And should my son Peter marry and die without legal issue, it is my will that such property as he may receive from my estate, be equally divided between his widow and my daughter Frances M. In case my son Peter S., and my daughter, both die before attaining the age of twenty-one years, without children surviving them, then and in that case I bequeath to C. C. Cage and Catharine his wife my whole estate, giving to Ellen Jane, my great niece—(Here follow some small legacies.) And now I pray my well-beloved nephew to be a friend to my little girl and my son.

"And now, for the great love I bear you and yours, Claiborne Cage, I pray you to see and attend to all my matters of a legal nature, seeing full justice done to my children.

"My last wish is, that though this my last will and testament be not written in strict legal phraseology, it may not be the cause of any litigation whatever, but be construed as intended, to keep my children from want, by securing their property so that they cannot squander it; and in the event of their deaths without lawful heirs, that those who have been our steady friends may receive the benefit of what little we have: and to God, the giver of every good and perfect gift, I commit myself and my children, praying his will be done. Amen.

Signed,   "ELLEN C. MOORE."

On the trial no proof was offered on either side, except the receipts of P. S. Moore for the $300 annuity, as stated in the answer.

The Court of Probates ordered a division of the estate as prayed for, and West and wife appealed.

*Yerger* and *Rucks* and *Yerger* and *Anderson,* for appellants.

Wills should be construed in such a way as will effect the evident intent of the testator, regardless of technical niceties and expressions; and that intent will always be enforced and carried out, if it can be consistently with the rules of law.

No doubt can exist as to the intention of the testatrix in this case. It was, palpably, to make the legacy to her son conditional upon the contingency that "he should go to some college and acquire a good practical education, and be of good conduct and steady habits till the age of twenty-four years," and discontinue his wild, extravagant, and dissipated habits.

A conditional bequest is one "whose existence depends on the happening or not happening of some uncertain event, by which it is either to take place or be defeated." 1 Roper on Legacies, 500.

In deeds, which are presumed to be made with great care, the law has ordained certain appropriate words to create conditions, but in wills other words are sufficient. In all cases, therefore, where the intention can be collected from the whole will, that the bequest should be conditional, and the terms are so definite as to admit of execution, that intent, if legal, will be effectuated, by whatever words expressed. Ib. 501.

The words, "as, if, provided, in case of, when," &c., are the most appropriate words to express a condition, and when used in a will, unless controlled by the context, no estate will vest in the legatee, until the time or happening of the event indicated in the will. Ib. 383.

Conditions are either precedent or subsequent, and as there are no technical words to distinguish them, it follows, that whether the one or the other, is matter of construction, and depends on the intention of the party creating it. 4 Kent's Com. 125.

A precedent condition is one which must take place before the estate can vest. Precedent conditions must be literally performed; and even a court of chancery will never vest an estate where, by reason of a condition precedent, it will not vest in law. It cannot relieve from the consequences of a condition precedent unperformed. Ib. 125; 1 Jarman on Wills, 696.

West and wife *v.* Moore.

Subsequent conditions are those which operate upon estates already created and vested, and render them liable to be defeated. 4 Kent. Com. 126.

Was the bequest in this case dependent upon a condition precedent or subsequent? Evidently on a condition precedent. This appears, from the whole will, to have been the intention of the testatrix.

1. Her son was, at the making of the will, of wild, extravagant, and dissipated habits.

2. It was her object so to place her property that it might not be squandered, but that the objects of her bounty might enjoy it.

3. To that end she placed it in the hands of trustees, who were to retain it until the son arrived at the age of twenty-four years.

4. The words used were such as are peculiarly appropriated to designate a condition precedent, to wit: " If my son will be of good conduct and steady habits till the age of twenty-four, and will go to some college," &c., it is her will that her estate be divided, &c. " But if my son Peter continue in his wild, extravagant habits, my daughter is to inherit," &c.; allowing three hundred dollars per annum to the son.

Examples will be found in Roper on Legacies, 384, *et seq.*, which show the true construction of this will is, that the performance of the conditions annexed to it are precedent to the vesting of the estate in the son.

The case of *Tattersall* v. *Howell*, is so like the present that we refer the court particularly to it, as conclusive against the right of the appellee. See 2 Merrivale R. 25.

*W. P. Harris*, for appellee.

The fundamental provision in the will is in these words: " I devise my whole estate, both real and personal, to my said executors, for the use.of my two children (Peter Smith Moore and Frances Matilda Moore, are their names), and such charges as I shall make thereon." This language, by itself, discloses an intention which accords with its legal effect, which is to vest the estate in the children; and unless this intention and legal operation is inconsistent with the other provisions of the will, we are bound to give to it its natural force.

We start out, then, with an intention to vest the estate imme-
diately in the children, and with the language appropriate to the
intention.  If a contrary intention is not elsewhere clearly ex-
pressed, we must interpret all the other provisions of the will by
this fundamental and clearly.expressed provision.  See *Marshall's
Opinion*, 3 Peters, 376, 377.

Is there any other provision or clause in the will in opposition
to the vesting of the estate ?

The charge that the estate is to be kept together, in the hands
of the executors, until the debts are paid, does not prevent the
vesting of the estate in the devisees.  Even where the estate is ex-
pressly devised for the payment of debts, it is a mere chattel inte-
rest ; but such a provision as the one contained here does not
amount to that, for in legal effect it does no more than the law
does.  The executors are to pay debts before distribution ; and
debts are a charge on both real and personal estate.

The power to sell is a mere discretion to change the form of the
property, and this does not prevent the vesting of the estate.

If we look further, and examine every other provision which is
unambiguous, which has a meaning distinctly expressed, it will be
found that none of them contain anything indicating an intention
different from that which the language of the first provision clearly
expresses.

There is a clause of the will, the precise meaning of which, and
the legal effect of which, is doubtful.  No one can read it without
admitting that its meaning is obscure, and its proper legal con-
struction uncertain.  And just here let it be borne in mind, that a
clear, precise, and definite clause, leaving no doubt in the mind as
to its purpose or effect, stands opposed by nothing in the will ex-
cept this clause, the meaning of which is doubtful ; and the ques-
tion is, whether we shall adopt a construction of this clause which
will leave the first as it is expressed, or one which will contradict it.

The inquiry now is, not whether we shall be able to extract
some meaning from those parts of the will which relate to Peter,
but whether we can extract an obvious purpose in conflict with that
indicated by the explicit language of the fundamental provision ;
and in this inquiry let us invoke the last clause in the will.  It has
been said, that when a person sets about making his will the whole

West and wife *v.* Moore.

plan and its details are present to his mind, and his language is measured by his plan. If this may not always be true of the language at the commencement, it must be true of language used at the close, especially when the purpose is to sum up and explain. The testatrix here viewed the objects she contemplated from both points. At the close she says : " My object, in the foregoing provisions, has been merely to secure to my children *their property*, so that they may not squander it." If the will gave Peter no property but his clothes and food until he was twenty-one, and only $300 per annum after he was twenty-four, this language would be without meaning. But on the supposition that the estate vested by the first clause subject to a condition, by which it was to be defeated, then it is a full explanation of the reason for restricting Peter's expenditures during his minority to those of absolute necessity. She says, in so many words, that this provision was intended to guard his property against waste ; and if he had no property by the terms of the will, and was only to *acquire* it by his own conduct in the future, the explanation is without any meaning. It is apparent, therefore, that in the view of the testatrix the will had the effect of vesting an estate in Peter beyond his board and clothes.

Let it be conceded that the testatrix had a clear intention to employ her bounty in such manner as to induce her son to conform his conduct to her wishes. Our purpose is not to oppose her intention, or to defeat it. The point discussed is, whether compliance was to be induced by the hope of reward, or compelled by the dread of a penalty. The prime object is attained, whether we hold that the estate was to be *acquired* by obedience or *forfeited* by disobedience. Therefore, if we should construe the whole will so as to harmonize with the first leading clause in it, and give to Peter a vested estate in interest, though not in possession, with the restriction against squandering it in the meanwhile, with a condition subsequent by which he may forfeit it, we do no violence to the paramount object of the condition. We would thereby conform to the known intention, and give to plain and unambiguous language its natural operation.

But let us see if the exigencies of the will, the legal effect of its terms, do not demand that we shall regard the estate as vested and subject to forfeiture. There can be no doubt that the testatrix

made a complete disposition of her estate; that she disposed of her "whole estate, both real and personal," without any reservation of reversion, or possibility of reversion. All the accidents of life, all the known contingencies which could affect the objects of her bounty and alter the devolution of the property, were distinctly provided for,—death without marriage, death under twenty-one, and death without issue living, &c. There is no provision for the return of the property to the estate on any of the contingencies mentioned, or in any event whatever. It would be absurd to say that all the estate did not pass from the testatrix at her death, when she declares that she devises the "whole" of it to her executors for the use of her two children. The executors did not take the "use" nor any beneficial interest, and there is no residuum to be disposed of by law, or to descend to the heir. It is perfectly obvious, that so far as the daughter is concerned, her estate vested and her interest is conferred by the same clause which confers upon the son such estate as he takes. The will gives the property to the two children jointly, by the same clause and by the same words. Can we say that the half of the whole vests in one joint tenant and not in the other? What becomes of the interest intended for Peter during the interval which is to elapse before the event which is to make it absolute in him or in the daughter?

But this brings us to consider whether there was any interval, and what was the interval. The condition, if held to be valid, if sufficiently certain to apprise the son of what he was to do or to avoid, and to enable the court to judge whether it had been done or omitted, and the consequences declared with sufficient clearness, was to avoid a course of life towards which Peter seemed to have a disposition when a boy, or to abandon habits likely to be confirmed. The rule is, that a condition once performed is gone forever. Was this a condition which could be performed at any time or on any day, after the son became aware of the bequest? Supposing the condition a precedent condition, would it be a just interpretation of the will to hold that, by good behavior for a week, or a month, or a year, the condition would be performed? Reformation of habits, or the correction of disposition, consists in a change of mind and conduct. The resolution may be instantaneous, but there must be a visible and reliable result,—fruits, in other words, and time is

demanded as a test. The age of twenty-four is pointed out by the will for some purpose, having reference to Peter and not to the estate. It seems that the object of naming this period had no reference to the payment of debts, to the daughter, or to accumulation. It is fair to presume that it indicated the *locus penitentiæ.*

The condition on which the daughter is to take the estate, is the continuance of Peter in a course of life from which the testatrix desired to divert him. It would be unreasonable to say that she demanded instantaneous reformation, but she has not indicated how long or how short a continuance is to entitle the daughter to the whole estate. A continuance, however, is the condition on which she is to take. Let it be assumed, and it is perhaps as reasonable as any view we may take of it (for during this interval there may be reforms and relapses too perplexing to consider), that Peter was not to continue in certain courses, but immediately to abandon them, and to continue the new line of conduct until he was twenty-four, in order to give assurance of reformation. We leave an interval of several years, during which the estate, which has passed out of the testatrix, vests in nobody. But what is more to the point, suppose that Peter, yielding to the hope of reward or to his mother's earnest prayer, instantly ceases to follow a course of life reprobated by her, and entered upon a course of good conduct, and at the age of twenty-two has married and had children, but died before he attained twenty-four, leaving a widow or child surviving. It will be perceived that here is not a continuance, which is to give the estate to the daughter, nor is it the completion of that probation by which he is to acquire an estate, on the supposition that it is a condition of acquisition, and not a condition of forfeiture. What is to become of the estate in such an event? an event which must have been contemplated, because one of the ordinary contingencies of life. The estate would not go to the daughter as a forfeiture, because Peter has not continued his bad habits or dissipation; and the other contingency on which she is to take the whole, is the death of Peter without children or widow surviving. The executors cannot take, and the will has not declared that the interest shall return to the estate. We are at once ready to exclaim, why not allow it to go to the children of Peter, or to his widow? The answer is, that it can only go to the child or children (where,

it is very clear, the testatrix contemplated it should go), by holding that Peter took a vested estate in interest, subject to a condition of forfeiture, which forfeiture did not take place, and by his death can never take place, and by this means the vested estate would go to his children.

It is no answer to this reasoning to say, that as a precedent condition not performed, the estate intended for him would descend, one-half to his children, and the other to his sister. The testatrix evidently did not mean that Peter's family should, without fault in him, suffer, or that the daughter should gain. Nor is it an answer to say that, as a subsequent condition unperformed, a like consequence would follow. On the contrary, it would not follow. For time here entered into the thing that was to be performed. The thing required was not an act to be performed at once—in a day or a year; he was to continue in a certain course for a certain time, and if the time was cut off by his death, it would be a prevention by the act of God, as much as though he had been required to marry a person who died before the time when the marriage was to take place, or to reside in a certain place for a certain time, and death cut him off.

By giving, therefore, to the first clause in the will, its obvious meaning, we vest the estate, and thus fulfil all the conditions of the will, and provide for every contingency provided for in the will and contemplated by the testatrix.

When we assume that it was the design, not to annex an illusory condition, but to exact a substantial reformation, we are compelled to the belief that she intended to allow time; and when time is to do or perform the act or duty required, and no time is fixed for the vesting of the estate, the rule requires that we shall hold the estate to be vested in the meanwhile. 1 Powel on Devises, 137, 138. This is especially required where the devise is absolute in its terms, and in the present tense.

But there are some features of the will which seem to require that we shall hold the condition to be subsequent, or reject it altogether, as so vague and uncertain as to require us to discard it altogether. It assumes that Peter has the legal right to spend the property, and restricts the executors, during his minority, in the amount they shall advance to him; and that restriction is to last

only during his minority, which implies that after that another rule supervenes. The last clause of the will, explaining more fully the object of these restrictions, says, that the only purpose was (not to qualify the leading clause in the will) to prevent Peter from squandering the estate given to him. The will, therefore, must be read thus: "I devise my whole estate to the use of my two children, share and share alike; not to be divided, however, until the debts are paid, for which purpose it is to remain together in the hands of my executors. As my son Peter seems to be inclined to wild, extravagant, dissipated habits, I direct that my executors shall not advance to him, out of the estate given to him, more than what will be needed to furnish him the actual necessaries of life, until he is twenty-one years of age; and furthermore it is my will, if my son Peter continues in his habits of extravagance, &c., that the estate herein bequeathed to him, shall go to my daughter, she paying to him $300 per year." It may be positively affirmed that the will amounts to this, taking the clauses, that have a certain meaning, together. The first clause gives the estate jointly, and is the same as if the testatrix had said, "to be equally divided;" and it is clear that the estate is to become the daughter's in a particular event, and did not become hers by virtue of the first clause. All this can be certainly affirmed, and carries out the paramount intent to visit loss of property on Peter for misconduct. And it cannot be said, of what has been left out in this summary, that if taken in connection with it, it would vary the conclusion, or taken by itself, would constitute a condition precedent, because the omitted sentence is incomplete, and meaning uncertain. In such a case, courts being inclined to favor the vesting of estates, and subsequent rather than precedent conditions, a safe interpretation, consistent with the object of the whole provision, and fortified by unambiguous language, would be to hold the condition in this case to be one of forfeiture and not of acquisition.

But the condition is too uncertain to enable the court to enforce it. If the testatrix had said that Peter should cease to gamble, or to drink to excess, or to indulge any named vice, as in the case of *Tattersall* v. *Howell,* 2 Merivale, 25, so that an inquiry might be made as to whether he had ceased to get drunk, or to gamble, or the like, the result would depend upon evidence tending to prove or disprove

particular acts; but to inquire whether a man had abandoned wild, extravagant, dissipated habits, the result would depend on the peculiar views and opinions of the commissioner or the jury. The testatrix was a woman of pious tone of mind, and dissipation, in her opinion, embraced many things,—especially might it mean a waste of time in unprofitable pursuits, in fashionable amusements, which, in the opinion of the court or the commissioner, would be beyond the range of the inquiry. One man would say that dissipation meant nothing but drinking to excess, and finding that the party did not drink to excess, would report one way; while another would go farther, and decide, upon evidence showing a free and liberal indulgence of mere social pleasures, and an ill-regulated but not a vicious course of life, that it nevertheless fell within the prohibition.

The constitution and moral training of a large number of pious and useful people lead them to regard dancing as dissipation. Balls and fashionable assemblies, frequent attendance at theatres, are undoubtedly, by their code, placed under the head of dissipation, while, on the other hand, in the opinion of very many useful and upright people, all this is recreation and amusement, not dissipation.

We can readily see that the ordinary rules of investigation would decide whether a man continued to get drunk, to frequent public houses; but the result of an inquiry whether a man was wild, extravagant, or dissipated, would be very uncertain, because we would first have to settle in our mind what was wildness, and the like.

No instance can be found in which such conditions have been sustained, except where the testator *has specified particular acts or habits*, or where, by the terms of the will, the trustee or executor is intrusted with the discretion to give or refuse the bequest on his own judgment, or rather where the trustee or executor is selected by the will to signify or determine whether general reformation has taken place. In the latter class of cases, the testator has knowledge of the character and opinions of the person who is to decide, and has chosen him to judge by observation whether the proper standard has been attained. The courts have said, in such cases, they would not interfere with the discretion or judgment of the trustee.

Is it possible for the court in this case to give instructions to a commissioner? How shall we limit or bound the inquiry? The man may not drink, he may not gamble, and yet he may be wild, and extravagant, and dissipated. He may frequent bawdy-houses, and yet be frugal of his money; he may be wild, and yet free from any vice. The testator may demand reformation of any known vice as the condition on which his bounty is to be enjoyed, but he must furnish the court and the legatee with some well-defined rule, by which compliance or non-compliance is to be determined.

*George L. Potter*, on same side, filed an elaborate brief, too long for insertion. He made the following points, and cited the subjoined authorities.

1. The condition annexed to Peter's estate is subsequent, not precedent. *Finlay* v. *King*, 3 Peters R. 376; *Popham* v. *Bampfield*, 1 Vern. 79; *Gulliver* v. *Ashly*, 4 Burr. 1929; *Newkerk* v. *Newkerk*, 2 Caines R. 346; 2 Powel Dev. 187 (258); *Page* v. *Haywood*, 2 Salk. 570.

2. The condition is void for uncertainty. *Maddox* v. *Maddox*, 11 Gratt. 804; 1 Jarm. on Wills, 315; 8 Paige, 333; *Rothmahler* v. *Myers*, 4 Desauss. 215; *Mason* v. *Robinson*, 2 Sim. & Stu. 228; *Baker* v. *Newton*, 2 Beav. 112; *Beck* v. *Halsey*, 2 P. Wms. 387; *White* v. *Fisk*, 22 Conn. 51–52; Powell on Devises, 113 N. 5; *Doe ex dem Kenrick* v. *Beauclerk*, 11 East, 657; 4 Kent Com. 129–132; *Bradstreet* v. *Clark*, 21 Pick. 389; 1 Jarm. Wills, 318; *Jubber* v. *Jubber*, 9 Sim. 503 (16 Eng. Ch. R.); *Tritho* v. *Frazier*, 4 Harris & John. 446; *Literary Fund* v. *Dawsons*, 10 Leigh, 148; *Hester* v. *Hester*, 2 Iredell Eq. 330; 4 Cushing R. 184; 32 Maine R. 394.

HANDY, J., delivered the opinion of the court.

The appellee filed his petition in the Court of Probates of Wilkinson county, praying an allotment to him of one-half of the estate of his mother, Ellen C. Moore, deceased, which he claims was left by the last will and testament of his mother to executors, in trust for him and his sister, the wife of Richard C. West, to be equally divided between them, when the petitioner should become twenty-four years of age; and alleging that he had reached that age.

The present controversy turns, for the most part, upon the nature

and character of the estate bequeathed to the petitioner; and we have, therefore, to examine those parts of the will which respect the estate bequeathed and limited to him.

By the second clause, the testatrix " devises her whole estate, both real and personal, to her executors, for the use and benefit of her two children, and such charges as she shall make thereon, namely, Peter Smith Moore and Frances Matilda Moore," the appellee and the wife of the appellant, with power to the executors to sell such property as they might think most advantageous, but the property to be kept together in the hands of the executors until the payment of all her debts.

Then follows this provision in the fourth clause: "And as my son, Peter Smith Moore, seems to be of a dissipated, extravagant disposition, it is my will that my executors do not allow him to spend anything more than for necessary clothing, and food, and doctor's bills, whilst under the age of twenty-one years; and furthermore, if my son, Peter S. Moore, will go to some college, and by application acquire a good practical education, and by good conduct and steady habits until the age of twenty-four, it is my will that my estate be equally divided between my children, both real and personal; but if my son Peter continue in his wild, extravagant, dissipated habits, my daughter, Frances Matilda, is to inherit all my estate, both real and personal, allowing to my son three hundred dollars per annum."

The fifth clause provides that, in the event of her daughter's marriage, her portion of the estate be secured to her and her children, so that they may not come to want; and in the event of her dying without issue, that her brother should inherit her estate, &c.; and should Peter marry, and die without legal issue, that " such property as he may receive from my (her) estate, be equally divided between his widow and the daughter, Frances M."

After some other provisions, the will contains the following concluding clause: " My last wish is that, though this my last will and testament be not written in strict legal phraseology, it may not be the cause of any litigation whatever, but be construed as intended, to keep my children from want, by securing their property so that they cannot squander it," &c.

It was not alleged in the petition, nor shown by proof, that the

petitioner had performed any of the conditions mentioned in the fourth clause of the will, except that he had attained to the age of twenty-four years. The case appears to have been decided upon the force and effect of the will and the construction given to its provisions; and upon the hearing, a decree was rendered for the petitioner; from which the appellant's administrators *cum. test. ann.* have taken this appeal.

The first question for consideration is, whether the condition, that the petitioner should *go to some college and acquire a good practical education, and by good conduct and steady habits until the age of twenty-four years,* is a condition precedent to the vesting of the estate bequeathed to his use and benefit.

The language employed in expressing the condition, if taken by itself, appears to be free from doubt or ambiguity. It manifests a clear intention, that the vesting of the estate was to depend upon the performance of the acts, or the observance of the course of conduct required. The language is apt and proper to constitute a condition precedent,—*if* he shall do so and so, the testatrix's estate is to be equally divided between him and his sister; which shows a clear intention, that if he did not comply with the requisitions, the estate was not to be equally divided. But this is still more manifest from the negative form of expression which immediately follows, "but if my son Peter continue in his wild, extravagant, dissipated habits, my daughter Frances is to inherit all my estate." This has direct reference to the expression of a condition immediately preceding it, and must be construed in connection with the condition there stated. Both parts of the clause, taken together, show a clear and manifest intention, that if he complied with the requisitions imposed, the estate should, after the time stated, be equally divided between him and his sister; but if he failed to comply,— that is, continued in his wild and dissipated habits,—the estate should not be equally divided, and the portion intended for him should not vest, but that the whole should vest in his sister, subject to an annual allowance to him of three hundred dollars; and this clearly makes the vesting of the estate to depend upon the condition precedent, according to the language of this clause.

Is there, then, anything in the other parts of the will showing a different intention in the testatrix?

VOL. VIII.—9

West and wife *v.* Moore.

It is urged in behalf of the appellee, that the positive effect of the second clause, devising her whole estate " to her executors, *for the use and benefit of her two children*," was to vest the estate in the children at her death, subject only to the payment of debts, and to the special directions and dispositions with regard to the property made in the will ; that this effect can only be avoided by a positive indication of a different intention in other parts of the will ; that the provision in regard to the vesting of the estate in Peter being doubtful, must be interpreted with reference to, and so as to harmonize with, this plain and primary disposition of the estate, and must, therefore, be held to make his estate one upon *condition subsequent*, or *subject to forfeiture*, if he continued in his wild and dissipated habits ; and that this must be adopted as the proper construction of the conditions of the fourth clause.

But this position does not appear to be justified by the general spirit and purview of the will.

It may be true that the second clause, if taken alone, would vest the legal estate in the executors, which would inure to the benefit of the children of the testatrix by operation of the Statute of Uses. But it is plain that the legal estate is vested in the executors, as trustees ; and the will proceeds, in other clauses, to declare the uses and purposes for which that title was to be held by them.

In the concluding clause, the will, which appears to have been written by the testatrix herself, states distinctly the main purpose with which it was made, to be, " to keep her children from want, *by securing their property so that they cannot squander it.*" It appears by the fourth clause, that she considered her son Peter to be " of a dissipated, extravagant disposition," and that she wished to reform his evil propensity, and, in her own language, to " turn him from the error of his ways." In order to accomplish this end, she first directs that her executors " will not allow him to spend" anything more than for necessaries during his minority, which means, simply, that her executors should not furnish him with means, or pay his contracts, except for necessaries. She then directs, with reference to his course after his majority, that if he will go to some college and acquire a good practical education, and be of good conduct and steady habits, until the age of twenty-four, her estate shall be equally divided between him and his sister ; but if

West and wife *v.* Moore.

he continued in his dissipated habits, that the entire estate should go to the sister, except an annual allowance to him.

It is manifest that she was fearful that he would squander the estate which she wished to leave him, and that she intended to place it out of his power to do so until he should, by his conduct, give the evidence prescribed, that it might be safely committed to his keeping. Her purpose clearly was to prevent the squandering of the estate intended for him, and to produce reformation as a condition to its being placed in his hands. Accordingly, she restricts allowances to him by her executors to necessaries during his minority; and after that period, makes his estate dependent upon the condition of acquiring a good education, and continuing in good conduct and steady habits until the age of twenty-four. Until this contingency takes place, the executors hold the legal title under the second clause; and the purposes of the trust in their hands, as above stated, prevent the use being executed, at least in behalf of Peter; so that the first proposition upon which the position under consideration is based, to wit, that the estate vested in the children, at the death of the testatrix, by virtue of the second clause of the will, is not sustained, and the argument founded upon it fails.

The construction contended for, while it is not warranted by the phraseology of the fourth clause, is entirely irreconcilable with the primary purpose of the testatrix. She regarded the appellee as already wild and dissipated in his habits; and therefore she expressly declares her object to be *to secure the property* intended for him, *so that it should not be squandered.* To place it in his hands, subject merely to forfeiture of his estate in it, in the event that he should continue in his extravagant and dissipated habits, would have been to lead him into temptation by affording the means to do the very thing which she was so anxious to prevent,—to put it into his power to squander it; and that result might have been accomplished before he could have been arrested in his extravagance. So obvious a consequence appears to have been fully suggested to her mind, and to have been distinctly guarded against. But her object appears also to have been the reformation of her son from his objectionable habits. It is not to be supposed that she could have expected to do this by furnishing him with the means of indulging those habits, subject to be deprived of the

means if he continued in the indulgence of them. A much more wise and effectual mode of inducing the desired change appears to have been adopted by her,—to offer the bounty as the reward of reformation, and to withhold it until a compliance with the conditions imposed by her should give assurance that her wishes had been accomplished.

Such being her objects, as clearly indicated in her will, she has, in clear language, provided in her own way how the property shall be secured from being squandered, and how it shall be employed for his reformation, by requiring that the estate shall not vest in him until the conditions, which she thought fit to impose, should be performed by him.

There may be contingencies which would create a hardship under the rule fixed by the testatrix, as the condition for the vesting of the estate in the appellee, as in the supposed case of his reforming and marrying, and afterwards dying leaving issue, before reaching the age of twenty-four. We are not called upon to say whether such isssue would take the estate or any interest therein devised to him by the will, because no such case is here presented for consideration. We have to determine, simply, from the context of the will, whether the estate bequeathed for the use of the appellee was to vest for his benefit only upon condition precedent to be performed by him ; and, both from the language employed and the purposes of the testatrix plainly manifested, we think it clear that the estate did not vest for his benefit, except upon the substantial performance of the condition.

In opposition to this construction, several objections are taken in behalf of the appellee, which are worthy of notice.

*First.* It is said that the first part of the fourth clause, viz., that the executors should not allow Peter to spend anything more than for necessaries during his minority, shows an intention that he was to have a present vested interest in the estate. But we do not consider this provision as having the force contended for. It has reference expressly to Peter's expenditures during his minority, when he was not competent in law to make contracts, except for necessaries ; and of this disability it must be presumed that the testatrix was aware. It cannot, therefore, be supposed that she contemplated any power on his part over the estate. The legal

title was left to the executors, to whom was committed the entire management of the estate; and the provision simply amounts to a direction to them not to allow him during his minority to charge the estate in their hands beyond his necessary expenditures; that is, practically, not to pay his contracts or debts, except for necessaries, nor furnish him with the means to indulge his "dissipated, extravagant disposition," and to take all proper and needful steps to prevent him from contracting any other debts than for necessaries.

In support of the same view, it is also said that the concluding clause speaks of the property bequeathed to the children as " *their property,*" thereby showing that a present estate was intended from her death. This is the clause declaring that the will shall be so construed as " to keep her children from want, by securing their property so that they cannot squander it." But the clause, as is above shown, taken with the context, tends clearly to show that the estate was not intended to be vested presently in Peter, but was so disposed of that he could not squander it by extravagance. And the expression, " *their property,*" cannot be taken to mean a present estate vested, especially with regard to Peter, but the property *intended* to be bequeathed according to the terms of the will. And this is evident from the whole will with reference to him, and is shown by the clause in the fifth article in relation to him, that " such property as he *may receive* from her estate shall be divided between his widow and sister," in the event of his marriage and death without issue.

*Secondly.* It is insisted, that the words in the fourth clause in relation to the condition annexed to the vesting of the estate in Peter are uncertain, and the provision imperfect, by reason of the omission of certain words which are necessary to render the provision complete, and to show what was the real intention of the testatrix in the matter; and, therefore, that the entire provision in relation to the condition must be disregarded as incomplete and unintelligible. The omission is said to be in that part containing the words, " and by good conduct and steady habits until the age of twenty-four," in which something is wanting necessary to render the sentence complete and grammatical; and it is contended, that the words immediately following,—" It is my will," &c.,—are the

beginning of a new sentence, not appearing to be immediately dependent for their force or meaning upon the preceding words.

It is true that there appears to be an omission of some words, required by strict grammatical construction to render the sentence complete, or the improper introduction of some word. But the error or omission appears to be immaterial, and it does not affect the sense, which is plainly shown to be, that "if Peter will go to some college, and by application acquire a good practical education, and *by* (that is, *be of*) good conduct and steady habits, until the age of twenty-four, it is my will that my estate be equally divided between my children," &c. It is plain that the word "*by*," before the words "good conduct," may be omitted without impairing the sense, or, if retained, that it is simply inaccurate and *does not affect* the meaning. It is also evident that the sentence was not intended to close with the words "twenty-four," but that those and the preceding words of the sentence, were intended in direct reference to the words immediately following, and as stating the condition upon which she wished the estate to vest. The words "it is my will," &c., follow naturally the preceding words creating the condition; and, both considered together, show that they had direct relation to each other, the first being the condition, and the second the consequence; and this plain intention cannot be avoided by the use of an immaterial grammatical inaccuracy, or by the error of employing a capital letter in the midst of a sentence.

It is, therefore, evident that these parts of the fourth clause must be taken together, as parts of the same proposition, and having a necessary dependence upon each other. And this is rendered more manifest by the fact that, after declaring that if Peter would go to college and acquire an education, and be of good conduct and steady habits, until the age of twenty-four, it was her will that her estate should be equally divided between her children; she continues, "*but* if Peter continue in his wild, extravagant, dissipated habits, her daughter Frances should inherit all her estate," &c. This last passage has a direct reference to the preceding parts of the clause, showing the connection between the preceding parts, and what was to be the disposition of the property in the event that the condition previously stated, in order to the vesting in Peter of the estate intended for him, should not be complied with on his part.

If this view of the purpose and effect of these parts of the fourth clause of the will be correct, it obviates the objection urged against the condition, that no time is specified for the performance of it, and hence, that it is either void for uncertainty, or may be performed at any time during the life of the appellee; for the period of performance is limited until the age of twenty-four.

*Thirdly.* It is objected that the omission of any provision for the support and education of the appellee, after his reaching majority, and until the age of twenty-four, notwithstanding the desire expressed in the will that he should acquire a good collegiate education, shows that the estate was intended to vest in him without requiring the performance of the conditions precedent.

But the vesting of the estate in the appellee was not necessary in order to carry out the wish of the testatrix, that he should go to college and acquire an education, and have until the age of twenty-four to reform his habits. Having clearly expressed her wish that he should pursue that course of life, and should be allowed until the age of twenty-four to do so, before the estate should vest in him, by a clear implication the needful means to accomplish the end were to be furnished him, as well after his majority, and until the age of twenty-four, as during his minority. Hence the end which she was so anxious to accomplish could not fail for want of the means; and the omission of any specific provision for his support and education, is not irreconcilable with the condition precedent upon which the estate was to vest in him.

The next subject of inquiry is, whether the condition is void for uncertainty.

The substance of the condition is, that the appellee should acquire a good practical education, discontinue his wild, extravagant, and dissipated habits, and be of good conduct and steady habits until the age of twenty-four. The object was, that he might reform his moral habits, and by a course of good conduct and steady habits, until he reached the age of twenty-four, give assurance that he would not squander the estate intended for his benefit.

It is objected that it could never be ascertained, to any reasonable certainty, whether he had complied with these requisitions, as the question depends upon moral habits too vague and uncertain to be satisfactorily defined.

This is true to a certain extent; and the objection would apply to the consideration of all questions, depending upon moral qualities, which are constantly presented for the action of courts of justice,—such as questions of good faith, of intellectual and moral competency to do particular acts, of good or bad moral character, veracity, integrity, &c. The every-day affairs of men are involved in such questions, and they must be determined by courts, when rights depend upon them. The difficulty of adjusting them in a perfectly just manner, cannot avoid the necessity of their being determined in the most just way practicable; and they must, therefore, be settled upon such practical principles of conduct as generally govern men in their dealings with one another. In all such cases, the governing consideration must be, what was the intention of the party in requiring the condition or conduct provided for? what did he design to accomplish? and this must be ascertained from the nature and circumstances of the case.

It appears, in this case, that the testatrix regarded her son as of " dissipated, extravagant" habits, so much so as to make her anxious to secure his property so that he would not squander it. In order to effect this object, she imposed the conditions upon the vesting of the property mentioned in the will. Keeping in view this object, there appears to be no difficulty in determining, according to the principles by which similar questions are solved in the transactions of men, what he was required to do, and whether he had conformed his conduct to that standard. He was first required to change " his dissipated, extravagant" course, and to be of " good conduct and steady habits until the age of twenty-four." Ordinarily, it would certainly not be impracticable to determine whether he had so changed his habits, and acted with good conduct and steady habits for the period mentioned. The public judgment constantly determines such questions, and men competent to form opinions upon such matters, judge of them, and act upon such opinions—and the opinions of such persons, in such cases, form a proper basis of judicial action. Men of correct judgment might have no difficulty in coming to a conclusion as to whether a young man of the community was of such good conduct and steady habits as to give reasonable ground of belief that he would not squander his property; and this was the end which the testatrix appears to

West and wife *v.* Moore.

have been anxious to accomplish, and such the condition of the vesting of the property in him. This is all the assurance which she could have intended to require, and it is not so uncertain as to be incapable of being determined.

So it would not have been difficult for judicious men to determine from his conduct whether he " continued in his wild, extravagant, dissipated habits," so as to induce the belief that he would squander his property. These words must be understood in the sense in which they are used, and acted upon in the practical affairs of men in like cases, and according to the common understanding of them; for upon such questions, absolute perfection of judgment is beyond human capacity. Such opinions are constantly formed, and acted on in important matters of business, by the friends and acquaintances of young men, and their characters, in this respect, may be shown by that kind of evidence. There might be instances in which, from the peculiar condition of the person, judicious men might not be able to form an opinion as to his character. But such exceptional cases are not to furnish the rule of action in matters of this nature; for there can be but little doubt that discreet and intelligent men in the community will generally form a correct opinion as to whether a young man, who has lived among them until the age of twenty-four, is of " wild, extravagant, and dissipated habits" or not.

Looking, then, at the course of conduct required of this young man, in a practical point of view, as it was plainly intended by the testatrix, it does not appear that there could be any difficulty in determining whether he had substantially complied with the requisitions upon which he was to enjoy the estate.

This case does not appear to differ in principle from that of *Tattersall* v. *Howell*, 2 Meriv. 26, in which a legacy was left by a mother to her son, upon condition that " *he changed the course of life he had so long followed, and would give up all his low company and frequenting public houses entirely.*" These requisitions are certainly more vague, and difficult of proper ascertainment, than those in this case. Yet the condition was held to be valid, and that the legacy could not vest until it was shown to be performed.

We think, therefore, that this objection cannot prevail.

It follows, from these views, that as there was no proof of the

performance of the conditions imposed upon the vesting of the estate in the appellee, the decree in his behalf for one-half of the estate is erroneous, and that it must be reversed and the petition dismissed.

SMITH, Ch. J., being of kin to the parties, did not sit in this cause.